**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ALDEN BORDELON**                                                                                                    **CIVIL ACTION**

**VERSUS**                                                                                                                          **NO.05-2640**

**THE INDEPENDENT ORDER OF FORESTERS**                                        **SECTION "K" (1)**

**ORDER**

Before the Court is defendant's Motion for Summary Judgment (Rec. Doc. 18).  Having

considered the petition, memoranda, and relevant law, the Court **DENIES** defendant's motion.

**BACKGROUND**

Sometime in early 2003 plaintiff Alden Bordelon met with Independent Order of

Foresters ("IOF") insurance agent Brian Martin regarding the purchase of life insurance policies

for his wife, Laveta Bordelon, and himself.  On February 28, 2003, Laveta Bordelon submitted

an application to IOF for a life insurance policy.  Notably, Mrs. Bordelon was not physically

present when IOF agent Martin completed her application; rather "Brian Martin, the insurance

agent representing and compensated by IOF, filled out the application with information provided

by him by the Bordelons" over the telephone."  *See* Complaint, ¶ 6.   Subsequently a Medical

Examiner, arranged for by IOF, met with Mrs. Bordelon and completed the second part of her

1

application, after which the policy was issued at a preferred rating.  Plaintiff Alden Bordelon was listed as Primary Beneficiary.

On the insurance application Laveta Bordelon disclosed that she had seen Dr. Marsi Asidifer and had last seen him in June 2002.  *Id.* at ¶ 7.  In Part II, the Medical Declaration, Mrs. Bordelon disclosed that she had been taking medication from Dr. Asidifer for hypothyroidism. *See* Medical Declaration, signed by Laveta Bordelon,  March 7, 2003.   On August 6, 2004, Mrs. Bordelon died of Stage IV colon cancer, within the two-year contestability window of the policy. Thereafter, IOF refused to pay Alden Bordelon's claim, alleging that Laveta Bordelon intentionally made false statements on her application and/or omitted information on her application.  *See* Petition ¶ 11.  Specifically, IOF asserted that she failed to disclose that she had received medication for depression and anxiety, *id*., and that had this condition been revealed, while the insurance certificate would have been issued, Mrs. Bordelon's premiums would have been $49 higher than they were.  IOF contended that as a result of these material misrepresentation the Certificate was thus null and void *ab initio*.  Consequently they rescinded coverage and returned all premium monies.  Plaintiff Alden Bordelon filed suit on May 17, 2005, alleging that IOF refused to pay the proceeds of the policy arbitrarily, capriciously, unreasonably, in bad faith and without probable cause.  *Id*. at ¶ 14.  IOF now moves for summary judgment on the claims against them.

## LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.   "[M]ere allegations" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e).  Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.  *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits" as "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are tasks for the trier-of-fact."  *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor.  "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed."  *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

Louisiana law provides:

[i]n any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be

deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

La.R.S. 22:619(B).   The burden of proving that recovery should be barred is upon the insurer. *See Jamshidi v. Shelter Mutual Insurance Co.*, 471 So.2d 1141, 1143 (La.App. 3rd Cir.1985). Additionally, Louisiana jurisprudence provides that a false statement bars recovery only if the insurer can show *both* that such statement materially affected the risk assumed by the insurer, and that the statement was made with the intent to deceive. *Coleman v. Occidental Life Insurance Co. of North Carolina*, 418 So.2d 645, 646 (La.1982).

## ANALYSIS

This case is about whether Mrs. Bordelon disclosed her medical history appropriately in filling out the application.   Assuming *arguendo* that Mrs. Bordelon's answers were misrepresentations,[1] and taking as true IOF's claim that it would have changed its premium calculation had she responded differently to the subject questions, IOF still has the burden of proving, as a matter of law, that Mrs. Bordelon's statements were made with the intent to deceive.  The Court finds that IOF has not sustained its burden of demonstrating the absence of genuine issues of material fact with respect to Mrs. Bordelon's alleged intent to deceive IOF.

The Court notes at the outset that proving a party's intent, especially when that party is unavailable to testify, is difficult.   *See Walker v. Massachusetts Indemnity and Life Ins. Co.*, 1993 WL 534190, *3 (E.D.La. Dec. 15, 1993).  As a result, proof of a party's intent is often not amenable to disposition on summary judgment.  *Id.*   Nonetheless, while it is difficult to prove

---

[1]This fact is disputed by plaintiff.

4

intent to deceive, courts may "look to surrounding circumstances indicating the insured's knowledge of the falsity of the representation made in the application," *Jamshidi v. Shelter Mutual Ins. Co.*, 471 So.2d 1141, 1143 (La.App. 3rd Cir. 1985), "or from circumstances which create a reasonable assumption that the insured recognized the materiality," *Watson v. Life Ins. Co. of La.*, 335 So.2d 518 (La.App. 1976); *see also Warren v. Massachusetts Indemnity and Life Insurance Co.*, 1989 WL 73354, *3(E.D.La. June 27, 1989).

Here the surrounding circumstances do not clearly demonstrate that Mrs. Bordelon's answers to the application questions, even if misrepresentations, were made with an intent to deceive. Nor does the Court find that the record, specifically the wording of the application questions themselves, would create a reasonable assumption that the insured, in this case, someone of Mrs. Bordelon's background and experience, would recognize the materiality. *See Watson*, 335 So.2d at 518. In fact, review of the entirety of Mrs. Bordelon's application reveals several confusing and inconsistent answers. For example, the Application was dated February 27, 2003. Question 14, page 8 of the application identifies "Marsi Asidifer" as Mrs. Bordelon's doctor with the "date last seen" of June, 2002. While this answer matches that of the medical examiner's Medical Declaration, Exhibit D, p. 11, it clearly contradicts the answer of Question 16(a) wherein Mrs. Bordelon allegedly answered "no" when asked if she had undergone "an examination, treatment, or consultations with a physician or medical practitioner within the past *5* years"(emphasis added). Similarly, Question 15(g) of the application asks if Mrs. Bordelon has been diagnosed or treated for "Diabetes; disorder of the thyroid, endocrine glands, or lymph

glands; elevated cholesterol or blood fats" to which Mr. Martin filled out "no."[2]  However, the

Medical Declaration, filled out by IOF's contracted Medical Examiner during the examiner's

face-to-face consultation with Mrs. Bordelon indicates that Mrs. Bordelon not only indicated that

she had been positively diagnosed for such disorders, but contains a brief explanation that she in

fact was being treated for hypothyroidism.[3]  See Exhibit D, p. 11.   Additionally, Question 16(b)

of the application asks if Mrs. Bordelon has "Been on or is not on, any medication or prescribed

diet?" to which "no" is checked; yet the Medical Declaration clearly states Mrs. Bordelon was

taking "syntharoid."[4]

     Assuming, as defendants do, that Mrs. Bordelon did actually possess the requisite intent

---

[2]Question 15 states:
15.     Has any Proposed Insured been diagnosed or treated for having any of the
     following:
     a) Convulsions, epilepsy, paralysis, mental, nervous, or brain disorder?
     b) Chest pain, pulse irregularity, high blood pressure, rheumatic fever, heart
     murmur, heart attack, stroke, or disorder of the heart, or circulatory system,
     anemia or disorder of the blood?
     c) Asthma, emphysema, tuberculosis, or chronic respiratory disease?
     d) Jaundice, hepatitis, intestinal bleeding, ulcer, chronic diarrhea, colitis,
     diverticulitis; or disorder of the stomach, intestines, liver, pancreas or gall
     bladder?
     e) Kidney stone or disease of the kidneys; disorder of the bladder, prostrate,
     reproductive organs or breasts; sugar, albumin, blood or pus in the urine?
     f) Arthritis, gout, or disorder of the muscles, bones, or joints, including the spine;
     deformity, or amputation; blindness or deafness?
     g) Diabetes; disorder of the thyroid, endocrine glands, or lymph glands; elevated
     cholesterol or blood fats?
     h) Cancer, tumor, mass, lesion, collagen disease?

[3]Question 2.g. of the Medical Declaration  reads "Have you ever been positively
diagnosed or treated by a physician for:  . . . Diabetes, thyroid, or other endocrine disorders?"  In
the "Details" section explaining "yes" answers it is written, in part,  "[Diagnosed] 5 to 6 yrs ago-
hypothyroidism, Dr. Asadifar, Marzi Ochsner Clinic Takes Synthroid daily . . ."

[4]Id.

to deceive IOF via these and other misrepresentations, the Court finds that under the facts

presented, Mrs. Bordelon could have hardly been more obvious about it.  *See Toups v. Equitable*

*Life Assurance*, 657 So.2d 142, 146 (La.App. 3 Cir. 5/3/95).  The Court finds it curious as to why

one intending to deceive an insurance provider on an application would not only  provide both

Dr. Asider's name and the date of her last visit over the telephone to the insurer's agent, but

apparently also reveal details of her medical condition to the medical examiner who visited with

her in-person.  Even granting defendant's arguments that there are inconsistencies on Mrs.

Bordelon's application and that these inconsistencies amount to material misrepresentations.

The Court finds it telling that those answers which do not match those taken of Mrs. Bordelon

in-person by IOF's own contracted medical examiner also happen to be the same answers that

were taken down by the third party agent over the telephone.   Granted Mrs. Bordelon answered

"no" in response to whether she had been diagnosed or treated for having, *inter alia* "mental,

nervous, or brain disorder[s]"  despite medical records (to which IOF was privy)[5] showing she

had been treated for anxiety and depression as a result of the murder of her sister.[6]  However, the

Court is unconvinced that a layperson, when applying for insurance, would necessarily

understand that depression and anxiety as a result of a family tragedy qualifies as a "mental" and

_____

[5]By signing her application for insurance Laveta Bordelon authorized IOF to obtain and disclose any and all of her medical information.  See Exhibit D, p. 10.  Despite this authorization, and the various facial inconsistencies contained in her application for insurance, IOF did not investigate Mrs. Bordelon's *entire* medical history nor did IOF obtain the records of Dr. Asdifier until after Mrs. Bordelon died, and plaintiff made a claim under the policy.  See Rec. Doc. No. 35, Defendant's Reply Brief, p. 6.

[6]Question 15(a) states:
"Has any Proposed Insured been diagnosed or treated for having any of the following: . . . a) Convulsions, epilepsy, paralysis, mental, nervous or brain disorder?"

7

or "nervous" "disorder," and/or  would be material to IOF's issuance of an insurance policy.[7]

Given all of these inconsistencies, the Court cannot find, as a matter of law, that Mrs.

Borderlon's answers were false or made with the intent to deceive.  To do so would

impermissibly and arbitrarily place all of the blame for all of  these inconsistencies on Mrs.

Bordelon.   While it could be true that Mrs. Bordelon possessed actual intent to deceive IOF, the

Court finds the opposite could *also* be true, namely that Mrs. Bordelon answered all questions

asked of her truthfully, honestly, and to the best of her ability at the time, such that any errors,

omissions, or inconsistencies simply reflect the carelessness of one of the many parties involved,

or the difficulties of a telephone application.  As the Court must take plaintiff's facts in the best

possible light, this sort of factual determination must be left to a jury.   Consequently, due to the

equivocal nature of the language of the application questionnaire, Mrs. Bordelon's responses,

and the fact that the agent, rather than Mrs. Bordelon herself, completed the application over the

phone, the Court finds too many disputed issues of material fact exist such that summary

judgment is not appropriate.

    Accordingly,

**IT IS ORDERED** that defendant's Motion for Summary Judgment (Rec. Doc. No. 18) is

**DENIED**.

    New Orleans, Louisiana, this  __28th__  day of August, 2006.

_____

_____

[7]Notably, Dr. Asidifer, the doctor identified by Mrs. Bordelon as her most recent treating physician on the Application documents, is the same doctor who was treating her for her depression and anxiety and for her hypothyroidism.

8

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**